Bortnick v. Cudahy Packing Co.

No. 26,529.

NICK BORTNICK, *Appellee*, v. THE CUDAHY PACKING COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. TRIAL—*Misconduct of Counsel—Correction of Improper Remarks.* Error assigned on misconduct of plaintiff's counsel and the insufficiency of the trial court's ruling thereon to cure the misconduct complained of, examined, and not sustained.

2. APPEAL AND ERROR—*Review—Conflicting Evidence.* Rule followed that the determination of the preponderance of conflicting evidence is the function of the trial court, not that of the supreme court on appeal.

Appeal from Wyandotte district court, division, No. 1; EDWARD L. FISCHER, judge. Opinion filed December 5, 1925. Affirmed.

*J. E. McFadden* and *O. Q. Claflin, Jr.,* both of Kansas City, for the appellant.

*W. W. McCanles,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for an injured workman's compensation. Plaintiff was injured while employed in defendant's packing plant. A heavy cage fell on plaintiff's foot and broke two of the metatarsal bones. It was alleged and part of plaintiff's evidence tended to prove that the tendons which controlled the toes were matted and grown together, and that such injury was permanent in character and that it partially disabled plaintiff from earning a livelihood in the sort of work he was accustomed to perform.

The defense was that there was nothing the matter with plaintiff, that he had fully recovered from the injury to his foot, and that defendant had paid him $245 in full settlement for all compensation due him.

The jury answered some special questions in accordance with plaintiff's allegations of fact, and judgment for $2,482 was entered in his behalf.

Defendant assigns a number of errors, only two of which require discussion.

1. Trial, 38 Cyc. p. 1504; Appeal and Error, 4 C. J. § 2938. 2. Appeal and Error, 4 C. J. § 2838; Workmen's Compensation Acts, C. J. § 144; 2 R. C. L. 194 *et seq.*

The first relates to the argument which plaintiff's counsel addressed to the jury, in which he said:

"'The defendant was trying to hoodwink the jury and throwing smoke and dust in the jury's eyes, and trying to trap the jury,' by saying that the plaintiff was entitled to a nominal recovery when the defendant well knew that if the jury returned a verdict for plaintiff for less than permanent total disability plaintiff would not be entitled to recover a cent, and if they returned a verdict for less than permanent partial disability the court would enter a judgment in favor of the defendant.

[Counsel for defendant]: "I object to that line of argument, because it is all in the record, and Judge Fischer knows that it is in the record, and that argument is not made in good faith.

[Counsel for plaintiff]: "Your honor knows what the law is.

The Court: "I don't think your statement is correct, Mr. McCanles. The jury have nothing to do with that part of it anyway. It is a matter for the jury to decide regardless of what effect the answers have on the compensation. What I want the jury to do is to settle the facts of the case, and then the court will settle the law.

[Counsel for defendant]: "That is not a proper argument for Mr. McCanles to make to the jury.

"The Court: I don't think it is. The jury will not regard it; it will be stricken out.

[Counsel for plaintiff]: "Let me state just the reason why I stated that, that in the argument that Mr. Claflin gave to the jury—

[Counsel for defendant]: "That is further misconduct of counsel. The court has sustained the objection.

[Counsel for plaintiff]: "I want to ask at this time, if that is proper; will you put into the record that you are willing to pay this man six dollars a week?

[Counsel for defendant]: "I have put it into the record.

[Counsel for plaintiff]: "All right; then we will go on."

Defendant contends that the court's ruling, "I don't think it is. The jury will not regard it; it will be stricken out," was insufficient to cure the misconduct of counsel; and defendant argues further that the ruling was one "of indiscretion and a most flagrant abuse of discretion." We do not think so. The argument of plaintiff's attorney itself was not nearly so reprehensible as defendant assumes. At most it was merely fallacious and sophistical, perhaps silly; but it does not read like a malicious statement, nor is it indicative of misconduct. Furthermore, we cannot assume that the jury were so stupid that they would be swayed from their duty by such an argument, especially when the trial court ruled in the presence of the jury that it was not a proper argument to make

and directed the jury to disregard it. Moreover, in this case the jury's findings did not amount to a picayune until they were adopted and approved by the trial court as its own (*Ruth v. Witherspoon-Englar Co.*, 100 Kan. 608, syl. ¶3, 164 Pac. 1064; *Zwaduk v. Morris & Co.*, 109 Kan. 186, syl. ¶1, 197 Pac. 868; *Bell v. Skinner,* 119 Kan. 286, syl. ¶ 2, 239 Pac. 965), and surely defendant would not argue that such a ridiculous piece of sophistry as it puts into the mouth of plaintiff's attorney would beguile the trial court into an erroneous conclusion and judgment in, this case. Before leaving the point altogether it is but fair to add that counsel for plaintiff does not concede the accuracy of the speech attributed to him. The speech was not taken down by the court reporter. It appears only in an affidavit of defendant's attorney in support of a motion for a new trial; and it was partially denied and rather plausibly explained in a counter affidavit showing that whatever plaintiff's counsel did say on the matter complained of was in an attempted answer to an argument to the jury made by defendant's attorney indicating what he conceived to be the maximum amount of compensation to which plaintiff was entitled. There is no prejudicial error in the incident complained of.

The other error urged on our attention relates to the insufficiency of the evidence to sustain the findings and award. Defendant says the evidence was "so overwhelming in favor of the appellant that it should immediately challenge a consideration by the court, to the end that it should be considered and weighed in order that substantial justice may be done." Counsel for appellant admit their familiarity with the appellate practice in this court, that a court of appellate review is not a fact-finding tribunal; but they assume that we can go far enough into the evidence to determine where its "great preponderance" lies, and they argue that where the preponderance of the evidence is very great, as they assume it to be in this case, in favor of appellant, this court should disregard the facts ascertained by the trial court and enter judgment on the facts as we ascertain them to be. That cannot be done. (*Agricultural Ins. Co. v. Ætna Ins. Co.*, 119 Kan. 452, 457-461, 239 Pac. 974.)

It cannot be denied that plaintiff did adduce some testimony to support the findings of fact. He so testified himself. So, too, did the expert witnesses, Doctor Faust and Doctor Campbell. Even Doctor Rose, one of the doctors commissioned by the trial court

Bortnick v. Cudahy Packing Co.

to examine plaintiff's foot, when called upon to give his opinion touching the permanency of plaintiff's injury, testified:

"The plaintiff has been walking on the outer portion of his foot simply because he has been favoring this foot. If he would walk on his foot probably this trouble would be eliminated.

"CROSS-EXAMINATION.

"Inflammation has caused the tendons to sag somewhat. The tendons work in separate sheaths and when there is inflammation the tendons adhere and will in time be loosened. This condition is lots better than it was. It takes time. A weight of a thousand pounds falling on this man's foot might cause an injury to the ligaments and tendons, but they seem to be in good shape; you can outline them pretty good. I think the tendons are injured, but they were not severed, and we get what we call an inflammation there. In my opinion they in time would get so they would give. There is not much motion there. I cannot state this for true, but it is my experience of what I have had in other cases. . . . Of course it is possible that the tendon might be incrusted in some way so that he could not move his foot. This might cause him to walk on the side of his foot, because of some pain. . . .

"Q. He may carry it with him to the grave, he may carry it eight or ten years, and he may carry it a year? A. That is my opinion."

That there was strong and persuasive testimony to the contrary given by other medical experts is of no consequence now, since the trial court and jury gave no credence to what they testified.

"The district court is the fact-finding tribunal. Authority of this court is limited to correction of error, and it may not, in case of doubt, declare error in a conclusion of fact unless it has facilities for determining the fact which are equal to those possessed by the district court. When a question of veracity is involved, . . . this court does not possess facilities for determining the question comparable to those possessed by the trial court." (*The State v. Rieman*, 118 Kan. 784, 785, 236 Pac. 641.) .

The other errors assigned are not briefed, but they have all been considered. They suggest nothing requiring discussion.

The judgment is affirmed.