The State, *ex rel.*, v. Durein.

THE STATE OF KANSAS, *on the relation of Charles Curtis, County Attorney*, v. FRANK DUREIN *et al.*

1. CONTEMPT—*Jury Trial.* A party charged with contempt for the violation of an injunction is not of right entitled to a jury trial.

2. ERROR, *Assigned—Not Considered.* Where the plaintiff in error fails to specifically point out the evidence alleged to have been erroneously admitted, as the rules of the court require, the assignment of error will not be considered.

3. INJUNCTION—*Violation—Statute—Punishment.* In 1886, and under the act of 1885, the state obtained a judgment against the appellant, perpetually enjoining him from maintaining a common nuisance in violation of the prohibitory liquor law; and in 1887, the act was amended so that the penalty for the violation of such injunction was fine and imprisonment, instead of fine or imprisonment, in the discretion of the court. In 1891, the appellant was adjudged guilty of violating the injunction, and the penalty authorized by the act of 1887 was inflicted. *Held*, That the act of 1887 furnishes the measure of punishment for a contempt of that character, and that it applies to judgments rendered before the amended act was passed.

4. ATTORNEY'S FEE—*Unauthorized Allowance.* Upon the rendition of a judgment in such contempt proceedings, the court rendering the same may allow a reasonable attorney's fee in favor of the plaintiff and against the defendant therein, to be taxed and collected with other costs in the case; but no such allowance can be made in the absence of any proof as to what constitutes a reasonable fee.

5. DECREE, *Not Dormant—Contempt—Punishment.* A decree of injunction like that involved in the present case does not become dormant by the mere lapse of time, and the fact that more then five years have expired since the rendition of such judgment is no reason why a person who violates the same will not be subject to punishment for contempt.

*Appeal from Shawnee District Court.*

THE opinion states the nature of the action, and the material facts. Judgment against the defendant, *Durein*, at the April term, 1891. He appeals.

*Martin & Keeler*, and *Hazen & Isenhart*, for appellant.

*R. B. Welch*, county attorney, for The State; *John N. Ives*, attorney general, of counsel.

The opinion of the court was delivered by

JOHNSTON, J.: Frank Durein asks the reversal of an order and judgment made in an injunction proceeding. On March 19, 1886, the state of Kansas obtained a final judgment of perpetual injunction against Frank Durein and Conrad Kreipe, forever enjoining them, and each of them, from using or permitting to be used a certain building in the city of Topeka as a place where intoxicating liquors are sold, bartered, or given away, or kept for sale, barter, or gift, otherwise than by authority of law. On April 1, 1891, the county attorney of Shawnee county filed an affidavit with the clerk of the district court, charging that Durein & Kreipe had violated the perpetual injunction which has been mentioned, and thereupon the court issued an attachment to bring them before the court, and requiring them to show cause why they should not be punished for the alleged contempt. On April 13, 1891, Durein appeared, and a hearing was had upon the charge of contempt, when it was found that Durein had willfully and knowingly used, and permitted others to use, his premises as a place where intoxicating liquors were sold and given away without authority of law, in violation of the decree and judgment of the district court, and he was adjudged to be guilty of contempt. The penalty imposed was that he should be confined in the county jail for 40 days, pay a fine of $500, and that a fee of $100 be taxed for the county attorney as a part of the costs in the case; and, further, that Durein should stand committed to the jail of the county until the fine and costs were paid. A reading of the testimony leaves no doubt that Durein was engaged in the unlawful sale of intoxicating liquors on his premises, contrary to the decree of injunction; but nevertheless he insists that the proceedings in contempt were erroneous, and the judgment unauthorized.

The first error assigned by Durein is that his demand for a jury trial was wrongfully refused. While the proceeding was of a criminal nature, it was really incident to and one of the final steps in the civil action of injunction. He was not

entitled to a jury trial in the original proceeding, and neither could he demand a jury as a matter of right to try the charge that he had violated the injunction previously granted. The constitutional provision that "the right of trial by jury shall be inviolate," has no application in a summary proceeding of this character. This guaranty does not extend beyond the cases where such right existed at common law; and the right to punish for contempt without the intervention of a jury was a well-established rule of the common law. (*Kimball v. Connor*, 3 Kas. 414; *The State v. Cutler*, 13 id. 131; *In re Burrows*, 33 id. 675; *McDonnell v. Henderson*, 74 Iowa, 619; *The State v. Becht*, 23 Minn. 411; *The State v. Doty*, 32 N. J. Law, 403; *The State v. Matthews*, 37 N. H. 451; *Gandy v. The State*, 13 Neb. 445; *Arnold v. Commonwealth*, 80 Ky. 300; *King v. Railway Co.*, 7 Biss. 529; *Neal v. The State*, 9 Ark. 259; *Crow v. The State*, 24 Tex. 12; *Hart v. Robinett*, 5 Mo. 11; *Eikenbury v. Edwards*, 25 N. W. Rep. 832; Rapalje on Contempts, § 112; 3 Am. & Eng. Encyc of Law, 719.)

*1. Contempt—jury trial.*

The next error alleged is, that declarations made by Conrad Kreipe, not in the presence of Durein, were received in evidence over his objection; but counsel fail to point out where, in the voluminous record brought up, such testimony may be found. The pressure of business in this court is such that we cannot stop to search through a large record for alleged errors that are not specifically pointed out, as the rules of the court require. Besides, the concessions that have been made in this case would in any event render the objection immaterial.

*2. Error assigned — not considered.*

The further objection is made that Durein was sworn as a witness at the instance of the state. The record discloses that the court sustained an objection and did not require him to testify; and, hence, there is nothing substantial in the objection.

Is is next contended that the court had no authority to allow the county attorney a fee of $100, to be taxed as costs

against the defendant. It is claimed that the authority for taxing a fee for the county attorney in such a case may be found in § 4 of chapter 165 of the Laws of 1887. It is there declared that all places where intoxicating liquors are manufactured, sold or given away in violation of law are common nuisances, and provision is made for abating and enjoining the maintenance of such nuisances. To accomplish this object, provision is made in the same section for maintaining three proceedings or actions: First, a criminal action for prosecuting and punishing those who maintain a common nuisance; second, a civil action to abate and perpetually enjoin the maintenance of a nuisance; and, third, the prosecution and punishment of those who, in violation of an injunction, proceed to keep and maintain a common nuisance. It is then provided that—

"In case judgment is rendered in favor of the plaintiff in an action brought under the provisions of this section, the court rendering the same shall also render judgment for a reasonable attorney's fee in such action in favor of the plaintiff and against the defendants therein, which attorney's fee shall be taxed and collected as other costs therein, and when collected paid to the attorney or attorneys of the plaintiff therein."

In the contempt proceeding a trial is had, and there is also a formal judgment rendered, as well as in the other proceedings provided for in that section. There is an equal necessity for the services of the attorney general or county attorney in that proceeding as in the others. Although summary in its character, and the trial is had without a jury, an information or complaint must be filed and proper preliminary steps taken to bring the party before the court for trial. Evidence is then produced, and if the defendant is convicted the court imposes a fine of not less than $100, nor more than $500, and imprisonment in the county jail of not less than 30 days nor more than six months. As the state obtains a judgment in such a proceeding, it would seem under the provisions of the statute that an attorney's fee might be awarded in that case the same

as in the other.   In the present case, however, an insuperable objection exists against the allowance of such a fee and the taxing of the same as costs against the defendant.   No proof was offered before the court with reference to what constituted a reasonable attorney's fee in the case; and hence the allowance of the same was unauthorized.

**4. Attorney's fee — unauthorized allowance.**

It is further contended that there was no authority to impose the penalty adjudged by the court against Durein.   The ground of this claim is that the judgment of injunction was given in 1886 under the authority of § 13 of chapter 149 of the Laws of 1885, but that the violation of the injunction was in 1891, after that section had been amended and repealed. The section was amended by § 4 of chapter 165 of the Laws of 1887, but the only change made was in the penalty provided for the violation of injunctions granted under that law. Under the law of 1885, the court might impose a fine or imprisonment, or both, in its discretion; whereas, under the law of 1887, the punishment is required to be both fine and imprisonment.   But the amount of the fine and the duration of the imprisonment were not changed.   In fact, the provisions of the two sections are identical, except that in the latter it is made fine *and* imprisonment, instead of fine *or* imprisonment, in the discretion of the court.   It is clear that the provisions of the law of 1887 were applicable to the case, and that the defendant was subject to the penalty mentioned in § 4 of chapter 165 of that act.   Nothing in that act indicates a purpose on the part of the legislature to abrogate or annul any decrees of injunction which had been already granted.   Every provision with reference to instituting an action of injunction and obtaining a judgment perpetually enjoining the maintenance of a common nuisance is the same in every particular as the law of 1885.   So far as the provisions with reference to what constitutes a nuisance, and how the same may be abated and perpetually enjoined, are concerned, the law of 1887 was a reënactment of that of 1885, and they have continued uninterruptedly in force.   "The pro-

**3. Injunction — violation — statute — punishment.**

visions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment." (Gen. Stat. of 1889, ¶ 6687.) The amended law simply provides a different penalty for the violation of such injunctions, without regard to whether they were granted before or after the amendment was made. It is beyond question that it is competent for the legislature to change the penalty for the violation of existing injunctions at any time; and, where the penalty is increased or reduced without any express purpose of excluding existing injunctions from the new rule, it will apply to them as well as to judgments thereafter rendered. Even if the law of 1885 were in force, the penalty adjudged by the court was no greater than might have been inflicted under that act. By its terms the punishment for contempt might be both fine and imprisonment, in the discretion of the court; and the penalty adjudged did not extend beyond that. The act of 1887, however, furnishes the measure of punishment for a contempt of that character, and it authorized the judgment that was rendered.

Finally, it is suggested, rather than argued, that the decree of injunction is dormant and insufficient as a basis for a contempt proceeding, for the reason that more than five years have elapsed since its rendition. The provision of the code that a judgment shall become dormant and cease to operate as a lien upon the estate of the debtor when execution has not been taken out for a period of five years has no application to a judgment of this character. It was final and perpetual, and no execution was necessary to continue it in force.

5. Decree, not dormant — contempt — punishment.

It perpetually enjoined the defendants from the commission of an offense, and created no lien on their estates, and did not come within either the letter or spirit of the statutory provision with reference to dormant judgments.

The judgment of the district court will be affirmed, except as to the allowance of $100 as attorney's fee, which has been taxed as costs in the case. This item should be stricken out.

The cause will be remanded to the district court for this modification; and, when so modified, the judgment will stand affirmed.

All the Justices concurring.