No. 30,394.

THE STATE OF KANSAS, *Appellant,* v. CHARLES O'KEITH, *Appellee.*

(15 P. 2d 443.)

284

Opinion filed November 5, 1932.

*Roland Boynton,* attorney-general, *Walter T. Griffin,* assistant attorney-general, and *George L. Adams,* county attorney, for the appellant.

*C. H. Pugh, Lloyd F. Cooper, C. H. Brooks, Willard Brooks, Howard T. Fleeson, Frederick W. Aley* and *Carl G. Tebbe,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The state brings this appeal on questions reserved by it on an order of the district court of Sedgwick county setting aside a judgment entered against defendant about thirteen years ago.

The material facts of present importance are these:

On October 3, 1919, the appellee, who was then a boy thirteen years and eleven months old, was arrested on a charge of burglarizing a store building in Wichita and stealing five automobile tires therefrom. An information was filed charging him with burglary in the daytime and grand larceny, and five days after his arrest, on October 9, 1919, he was arraigned, and without advice of counsel he pleaded guilty to the charge, and was sentenced to imprisonment in the state industrial reformatory for a term of ten to fifteen years.

Pursuant to this judgment and sentence the appellee was incarcerated in the state reformatory. At the oral argument we were advised by counsel that he was later transferred to the penitentiary and set to work in the coal mine, and in some way escaped therefrom and got into trouble in Arkansas, and is in some penal institution in that state at this time.

On January 10, 1931, a motion was filed in his behalf in the district court of Sedgwick county to set aside the judgment and sentence imposed against him on October 9, 1919, for the reason that when that judgment was rendered and that sentence imposed he was an infant under sixteen years; that owing to his extreme youth he did not understand the nature of the charge or the gravity of the offense; that he was without counsel and was ignorant of court procedure; and that the court was without jurisdiction to render judgment against him.

The state resisted the motion. The trial court entertained it and heard the evidence—which clearly established the controlling facts. The appellee was shown to have been deserted by his father in his babyhood and his mother had died when he was three and one-half years old. The evidence of relatives and an entry of his birth in the family Bible established his age as thirteen years, eleven months and five days when he was sentenced to the reformatory. The court, Hon. Thornton W. Sargent, who had received appellee's plea of guilty twelve years previously, sustained the motion and set aside the judgment.

The state appeals. It contends that the judgment rendered in 1919 was not void. We must hold otherwise. A district court in this state is altogether without jurisdiction to deal with delinquencies of infants under sixteen years of age. It is the deliberate policy of this state that infants of tender years, however erring or wayward they may be, shall not be regarded as criminals or dealt with as such. (R. S. 38-415.) The state has created a special tribunal, the juvenile court, to deal with these youngsters; and that court has exclusive jurisdiction of all such persons under sixteen years of age. (R. S. 38-411; 38-414.)

In conformity with the juvenile court statute, this court has repeatedly held that the district court has no jurisdiction to impose a sentence on a delinquent child under sixteen years of age.

In *State v. Dunn*, 75 Kan. 799, 90 Pac. 231, it was held:

"The provisions of the act creating the juvenile court deprive the district court of all jurisdiction over a child under the age of sixteen years who is charged with a criminal offense, except to transfer the case to the juvenile court." (Syl. ¶ 1.)

In *State v. Dubray*, 121 Kan. 886, 250 Pac. 316, where this court discussed our statutory policy of dealing with juvenile delinquents, the syllabus reads:

"On September 28, a boy who became sixteen years old on June 3, was arrested for statutory rape committed on May 27, all in the same year, and was brought before a justice of the peace. At a preliminary examination the boy's age was disclosed, and the justice of the peace transferred the case to the juvenile court. The juvenile court referred the case to the district court for trial, a jury impaneled by the district court found the boy guilty, and the district court sentenced him on the verdict to the reformatory. *Held,* the district court had no jurisdiction to pronounce sentence on the verdict."

See, also, *In re Turner*, 94 Kan. 115, 145 Pac. 871; *Swehla v. Ma-*

*lone,* 114 Kan. 712, 220 Pac. 299; *Hollis v. Brownell,* 129 Kan. 818, 284 Pac. 388; *Hall v. Brown,* 129 Kan. 859, 284 Pac. 396.

The state's next contention is that the motion to set aside the twelve-year-old judgment was no more than a collateral attack. The motion was made in the identical case in which the judgment had been rendered, and the attack was aimed directly at that judgment. If such is not a direct attack it is not clear how one more direct could be made. Occasionally an objection to a judgment is characterized as "collateral" when the proper adjective to use would be "untenable" or some other word of similar meaning. A collateral attack on a judgment is something entirely different. In its simplest aspect it is an attack made in another lawsuit altogether. But it is needless to write a dissertation here on the distinction between a direct attack on a judgment and a collateral attack. This court performed that task fifty years ago. (*Mastin v. Gray,* 19 Kan. 458.)

Counsel for the state cites *In re Wallace,* 75 Kan. 432, 89 Pac. 687, where a boy of fifteen years, who had been convicted of a felony and sentenced to the reformatory, sought to be released by *habeas corpus.* The record showed that the question of the boy's age had been tried and decided in the criminal case; and of course this court applied the ordinary rule touching the binding force of a judgment subjected to a collateral attack—that is, an attack instituted in a different proceeding from that in which the judgment was rendered. That ordinary rule is that where there is no defect of jurisdiction of the party, or of the subject matter, or of the authority to render the judgment, it can only be called in question in a direct proceeding. If Wallace had filed a motion in the criminal case setting up his non-age and the district court's want of jurisdiction, a very different result might have been reached. (*Poorman .v. Carlton,* 122 Kan. 762, 253 Pac. 424.) Indeed this court's opinion in the Wallace case made it plain how the relief sought by the petitioner might have been obtained in a direct proceeding.

It is next suggested that this motion to vacate this twelve-year-old judgment was filed altogether too late—that it could only be effective if filed within the term at which it was rendered. Under the statute, however, "a void judgment may be vacated at any time on motion of a party or any person affected thereby." (*Revere v. Revere,* 133 Kan. 300, 299 Pac. 595.)

It is next suggested that a judgment and sentence in a criminal

case cannot be set aside after the sentence has been executed in whole or in part. Such is the general rule. One exception to it, of course, is where the defendant goes to prison for want of a stay of execution while his appeal is pending and undetermined. Another obvious exception must be made to the general rule to cover such a case as the one we are considering. Where a boy of fourteen years, too young to understand his rights and with no attorney to protect his rights, is subjected to prosecution as a criminal, the fact that the sentence has been executed, in whole or in part, will not hinder the court from undoing the wrong he has suffered, in so far as the removal of the stain of such a judgment is concerned, at least.

It is finally contended that the judgment of 1919 was voidable only and not wholly void. Since this proceeding was a direct and not a collateral attack upon the judgment and was predicated on a total want of jurisdiction, this last point is of no importance. Counsel speak of the recital in the judgment that the court found that defendant was over sixteen years of age. The recital is a defective one; the journal entry shows no joinder of issue touching his age; no such issue could have been raised and litigated since it is clear that he was not represented by counsel, and the files of the case show that no evidence on the point was received by the court.

Counsel suggest the possible menace to society if the procedure followed in this case is given the sanction of this court. To that suggestion we partly agree. One fearsome menace to society is in dealing with erring boys of fourteen years as criminals, dispatching them to a reformatory where they will fall under the influence of older youths who are criminals, and furthering their education in crime by incarcerating them in the state penitentiary, in whose coal mines such youngsters are likely to get a postgraduate course. That regrettable fact has actually happened in this case, with the result that society may have made a permanent and relentless enemy of this defendant. We can but hope, however, that the present belated effort to undo the injustice this defendant has suffered may soften his attitude towards law and government, and that he will yet become a good citizen. At least he shall now have this chance, and the judgment of the district court is affirmed.